## COLINE OIL CO. v. JONES.

No. 22622. Opinion Filed Feb. 9, 1932.

Rehearing Denied May 24, 1932.

Rainey, Flynn, Green & Anderson, John P. Roemer, and L. A. Marrs, for petitioner.

Cooke & Jackson, A. L. Jeffrey, and J. Berry King, Atty. Gen., for respondents.

LESTER, C. J. This is an original action in this court to review an award of the State Industrial Commission. The petitioner urges that there was no competent evidence to support the findings of the Commission. The claimant at the time of his injury was a welder, and while using a welding machine did not wear eye goggles or have any other protection for his eyes, and claimed that he was injured by reason of a spark flying from the welding machine into his eyes causing injury to them. The Commission awarded the claimant 40 per cent. loss of vision to the left eye and 10 per cent. to right eye, or an average loss of 25 per cent. to both eyes. The claimant testified in part:

"Q. What is the condition of your eyes today when compared with the condition they were in just prior to the time you received this injury? A. Well, it's quite a bit. Q. Are they as good as they were? A. Nothing like—no. Q. In your opinion, have you lost a portion of your vision? A. Absolutely. Q. As a result of this injury? A. Yes, sir."

Dr. Shelton, an admitted expert, testified in part as follows:

"Q. Do you believe the loss of vision you found is due to the accidental injury he complained of? A. Yes; that's the only diagnosis I could make. Q. To what do you attribute the loss of vision in the left eye? A. In absence of any other evidence, we could but attribute it to be some exposure. * * * Q. Then, it is your opinion that the claimant received a disability of 20/35, or equal to 12½ per cent. to the right eye and total loss of vision to the left eye as a result of the injury he received on February 16, 1930? A. No. I don't think so. He has a corneal scar that would probably cause some loss of vision of the left eye. I don't believe he would be entitled to 100 per cent. loss of vision to the left eye as a result of that injury. Q. What per cent. do you think he received by reason of the injury of February 16, 1930? A. Well, it would be kind of hard, without having tested his vision prior, to know what amount of loss of vision was caused by that accident. Q. Doctor, could you give an estimate of how much disability was caused by the scar and how much caused by the electric torch accident? A. Well, it would be just merely an estimate or guess. I would guess that scar might reduce his visional efficiency in that eye about 20 per cent. Q. Then you would assess 80 per cent. as caused by the injury? A. Yes, naturally that would be about what I would. * * * Q. Doctor, supposing a man had experienced a severe explosion—a sudden bursting up or flare up of gas whereby the entire body was burned and up the side of the head, would that have a tendency to cause this amblyopia? A. It might be if he was facing it and the light—well, I don't know—you wouldn't hardly expect to find that condition following an ordinary explosion. An ordinary explosion doesn't have incandescent light. If some foreign material like rock would strike him on the head or eye with sufficient force, it might injure the optic tract or center. Q. But you don't think a sudden explosion would cause this condition? A. No, I don't think a sudden explosion would cause this condition. Q. Doctor, one other question. I believe you testified before that there was no optic atrophy

there, but that syphilis might cause optic atrophy? A. Yes. * * * Q. If Mr. Jones, some six, eight or ten days prior to the time of this injury, appeared before the company's examining physician and he stood him up and tested his vision by closing one eye and having him read those letters and then passed him, would that indicate to you that the condition you now find was not present at that time? A. Yes; I so stated in my report that he gave me such a history."

Dr. Phelan, an admitted expert, also testified:

"A. If his vision was good up to the time he had this accident, then I would say the cause of disability was due to this light; if it existed before then I would say that whatever the condition was at that time would be responsible for it."

There is much expert testimony in the transcript which is conflicting in part with the claimant's testimony; however, this court has uniformly held that if there is any competent evidence reasonably tending to support the findings of the Industrial Commission, such finding will not be disturbed.

The petitioner complains that it did not have notice of the alleged injury. George Saybrook testified that he was working for the Coline Oil Company and that the claimant was under his supervision, and that the claimant did not tell him of the alleged injury until two days after claimant had returned to work, having been off duty two days. He also testified that he had reported the accident to Mr. Keller, but did not know whether Mr. Keller had reported it or not.

It appears that shortly after the alleged injuries, the claimant was treated by physicians of petitioner. The employer filed an answer admitting that the employee reported the initial injury by reason of the accident.

The award of the State Industrial Commission is affirmed.

CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. ANDREWS, J., absent.

Note.—See under (1) annotation in L. R. A. 1916A, 266; L. R. A. 1917D, 186; 28 R. C. L. 828, 829; R. C. L. Perm. Supp. p. 6254; R. C. L. Pocket Part, title Workmen's Compensation, § 116.